[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 3, 2011
JOHN LEY
CLERK

No. 10-11397
Non-Argument Calendar
_____

Agency No. 08-0688 BLA

RAMONA MCCRARY, widow of
JOHN E. MCCRARY, deceased,

Claimant,

U.S. STEEL MINING COMPANY, LLC,

Petitioner,

versus

DIRECTOR OFFICE OF WORKERS' COMPENSATION PROGRAMS,
United States Department of Labor,
BENEFITS REVIEW BOARD,
RAMONA MCCRARY,

Respondents.

_____

Petition for Review of a Decision of the
Department of Labor

_____

(August 3, 2011)

Before EDMONDSON, HULL and MARTIN, Circuit Judges.

PER CURIAM:

U.S. Steel Mining Company, LLC ("USSM") appeals the decision by the Benefits Review Board ("BRB") affirming the Administrative Law Judge's ("ALJ") grant of survivor's benefits to Ramona McCrary, surviving widow of deceased miner John McCrary, under the Black Lung Benefits Act, 30 U.S.C. § 901 et. seq. (the "Act"). No reversible error has been shown; we affirm.

In a petition for review under the Act, we review decisions of the ALJ only to determine whether they are in accordance with the law and are supported by substantial evidence in the light of the entire record. Pittsburg & Midway Coal Mining Co. v. Dir., OWCP, 508 F.3d 975, 980 (11th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.[1]

The Act provides benefits to the survivors of miners whose deaths were due to coal worker's pneumoconiosis ("CWP"). 30 U.S.C. § 901(a). To receive survivor's benefits under the Act, a claimant must establish that (1) the miner had

---

[1]Because this Court applies the same standard of review to the ALJ decision as the BRB, our review of the BRB decision is de novo. Id. We first analyze the ALJ's decision because "[w]hen the BRB upholds the ALJ's decision, this Court's limited review of the ALJ effectively cloaks the BRB's decision with the same deference to which the ALJ is entitled." Id.

CWP, (2) his CWP was caused by coal mine employment, and (3) his death was due to the disease. Bradberry v. Dir., OWCP, 117 F.3d 1361, 1365 (11th Cir. 1997).

At issue in this appeal is the third element: whether McCrary's death was due to CWP. In pertinent part, a miner's death is due to CWP if evidence establishes that CWP was a substantially contributing cause of death, that is, if CWP "hastens the miner's death." 20 C.F.R. § 718.205(c)(4), (5); Bradberry, 117 F.3d at 1366-67 (deferring to and applying the "hastening death" standard). A finding that a miner's death was immediately caused by something other than CWP is not inconsistent with a finding that CWP contributed to the miner's death. Id. at 1367-68.

In granting the claim for survivor's benefits, the ALJ concluded that the medical opinions of Dr. Rosenberg and Dr. Goldstein, USSM's experts, on the cause of McCrary's death were unpersuasive because neither doctor found the presence of CWP. The ALJ also concluded that, based on all the medical evidence from Dr. Crain and Dr. Dosmann, McCrary's treating doctors, CWP contributed to

3

McCrary's death because the presence of CWP prevented doctors from treating McCrary's lung cancer surgically.[2]

On appeal, USSM argues that the ALJ erred in concluding that CWP hastened McCrary's death. USSM contends that McCrary's main cause of death was lung cancer and that nothing supports the conclusion that McCrary would have been a surgical candidate had he not suffered from CWP, especially given his many other medical issues.

On whether McCrary's CWP precluded him from having surgery to treat his cancer, Dr. Crain unequivocally stated, in a 2006 letter, that McCrary was a non-surgical candidate because of "the extent of pneumoconiosis" from which he suffered and that pneumoconiosis contributed to his death. The ALJ was entitled to give Dr. Crain's opinion substantial weight because Dr. Crain was McCrary's treating doctor, he specialized in pulmonary conditions, he treated McCrary for respiratory and pulmonary conditions, and the treatment consisted of multiple visits. See 20 C.F.R. § 718.104(d)(1)-(4) (listing factors to consider in weighing the opinion of a treating doctor about whether a miner's death was due to CWP).

---

[2]This decision was the second ALJ decision in this case. The BRB remanded the ALJ's original decision granting survivor's benefits and instructed the ALJ to consider all of the doctors' opinions about the cause of death. But the BRB affirmed the ALJ's original finding that McCrary suffered from CWP.

This causation opinion is supported by earlier notations Dr. Crain made in medical records. In February 2003, Dr. Crain noted that McCrary was not a surgical candidate because of his hypoxemia and a lesion with evidence of mediastinal lymph node extension. Dr. Crain identified McCrary's hypoxemia as being caused by CWP. Dr. Dosmann agreed with Dr. Crain that McCrary was not a surgical candidate because of his pulmonary condition and the evidence of mediastinal lymph node extension. That complications from McCrary's cancer may also have counted against his being a surgical candidate does not alter that his CWP also contributed to his unsuitability for surgery. Because a reasonable mind could have interpreted and credited Dr. Crain's unequivocal opinion, in combination with McCrary's medical records, that CWP was the main reason that McCrary was unable to have surgery to treat his cancer, substantial evidence supports the ALJ's conclusion that McCrary's CWP caused his doctors to forego treating his lung cancer with surgery. See Pittsburg, 508 F.3d at 980. And the inability to operate on McCrary's cancer hastened his death.

We reject USSM's argument that Dr. Crain's 2006 letter was conclusory and lacked explanation. Dr. Crain explained that the reason he believed CWP significantly contributed to McCrary's death was, at least in part, because the disease prevented him from being able to receive surgery to treat his lung cancer.

5

And Dr. Crain discussed in the letter the medical evidence upon which he reached this conclusion, including a chest x-ray, a CT scan, a lung biopsy, and a pulmonary function test.

USSM also argues that the ALJ erred in discrediting the opinions of Dr. Rosenberg and Dr. Goldstein based on their conclusion that McCrary did not have CWP. USSM contends that the existence of CWP was independent from death causation. But we conclude that it was reasonable for the ALJ to give little weight to these doctors' opinions, both of whom concluded that McCrary did not suffer from CWP or any other condition aggravated by or related to coal dust exposure. A doctor who concludes that a miner did not suffer from an impairment related to coal dust exposure necessarily will find that a coal dust impairment did not cause the miner's death.[3] The ALJ acted in a reasoned manner in weighing the conflicting evidence and determining that Goldstein's and Rosenberg's opinions on whether McCrary's death was caused by CWP should be given little weight. See Bradberry, 117 F.3d at 1367 (explaining that "[t]he ALJ is responsible for making credibility determinations and for weighing conflicting evidence").

AFFIRMED.

---

[3]In addition, USSM does not challenge the ALJ's original finding that McCrary did, in fact, suffer from CWP.